

FILED
U.S. DISTRICT COURT
DISTRICT OF WYOMING

MAR 19 2010

Stephan Harris, Clerk
Cheyenne

# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF WYOMING

| | |
|---|---|
| STATE OF WYOMING, )<br>)<br>Petitioner, )<br>)<br>vs. )<br>)<br>INTERNATIONAL SNOWMOBILE )<br>MANUFACTURERS ASSOCIATION )<br>)<br>Intervenor-Petitioner )<br>)<br>vs. )<br>)<br>UNITED STATE DEPARTMENT OF THE )<br>INTERIOR; THE NATIONAL PARK )<br>SERVICE; KEN SALAZAR, in his official )<br>capacity as Secretary of the Interior; JON )<br>JARVIS, in his official capacity as Director )<br>of the National Park Service; and MICHAEL )<br>SNYDER, in his official capacity as )<br>Intermountain Region Director for the )<br>National Park Service, )<br>)<br>Respondents. )<br>)<br>vs. )<br>)<br>NATIONAL PARKS CONSERVATION )<br>ASSOCIATION, )<br>)<br>Intervenor-Respondent. )  | Civil No. 09-CV-0262-J<br>(Lead Case) |

1

| | |
|---|---|
| BOARD OF COUNTY COMMISSIONERS OF THE COUNTY OF PARK, STATE OF WYOMING, )<br><br>Petitioner, )<br><br>vs. )<br><br>INTERNATIONAL SNOWMOBILE MANUFACTURERS ASSOCIATION )<br><br>Intervenor-Petitioner, )<br><br>vs. )<br><br>UNITED STATE DEPARTMENT OF THE INTERIOR;  KEN SALAZAR, in his official capacity as the Secretary of the United States Department of the Interior; JON JARVIS in his official capacity as Director of the National Park Service; and MICHAEL SNYDER, in his official capacity as Intermountain Regional Director, National Park Service, )<br><br>Respondents. )<br><br>vs. )<br><br>NATIONAL PARKS CONSERVATION ASSOCIATION, )<br><br>Intervenor-Respondent. ) | Civil No. 09-CV-0272-J |

## ORDER GRANTING MOTION TO INTERVENE

The above-entitle matter, having come before the Court on the International Snowmobile Manufacturers Association's Motion to Intervene, and the Court having carefully considered the motion [Doc. 26], Declaration of Ed Klim [Doc. 27], opposition [Doc. 32], and reply [Doc. 34], and being fully advised in the premises, FINDS:

## I. BACKGROUND

On January 13, 2010, the Court entered an *Order Consolidating Cases for All Purposes* [Doc. 20], thereby consolidating Case No. 09–CV–262–J and Case No. 09–CV–272–J into Case No. 09–CV–262–J, which is now the lead case.

On November 20, 2009, petitioners filed their Petition for Review of Final Agency Action alleging Respondents' actions in developing the 2009 Winter Use Plan violated: (1) the National Environmental Policy Act (NEPA); (2) the Administrative Procedure Act (APA); (3) the Yellowstone National Park Act,16 U.S.C. §§21 - 404321 - 4370fc; (4) the National Park Service Organic Act, 16 U.S.C. §§ 1-18f-3; and (5) the United States Constitution. The 2009 Winter Use Plan reduces the number of snowmobiles permitted to enter into Yellowstone National Park each day. Under the Plan, 318 "best available technology" snowmobiles and 78 snowcoaches are allowed into Yellowstone each day for the 2009-10 and 2010-11 winters. Additionally, snowmobilers have to be led by a commercial guide. The rule implementing the decision was published in the Federal Register on November 20, 2009. *See* 74 Fed. Reg. 60159 (Nov. 20, 2009). Petitioners complain that the Plan essentially eliminates snowmobile access to Grand Teton National Park. They claim that while national parks were created "for the benefit and enjoyment of the people," the restrictions of snowmobiles arbitrarily deprives citizens of meaningful access to their national parks. Petitioners further propound the restrictions discriminate against snowmobiles in spite of "clear scientific evidence demonstrating that the environmental impacts of snowmobiles in the Parks are less then the impacts of snowcoaches and that the entry of greater numbers of snowmobiles in the last four years has not resulted in any harm to the Parks." Petitioners argue there is no rational basis for the

discrimination. Petitioners also take issue with the portion of the Plan that only allows commercially guided snowmobile access into Yellowstone Park. Petitioners stress that they believe the 2009 Winter Use Plan to be arbitrary and unlawful. Petitioners seek a ruling by the Court: (1) stating that Respondents violated NEPA, the APA, the Yellowstone National Park Service Organic Act, and the United States Constitution in developing the 2009 Winter Use Plans; (2) setting aside and remanding the portions of the 2009 Winter Use Plans that address the daily limits on snowmobiles entering the Parks and the commercial guide requirement for Yellowstone National Park; (3) ordering, on remand, that the violations be remedied, the final rules be revised, and that the Court will retain jurisdiction over the matter; and (4) reinstating the 2004 temporary rule.

In response to the petitions, the International Snowmobile Manufacturers Association (hereinafter applicant) filed a Motion to Intervene as a petitioner [Doc. 26] as of right under Federal Rule of Civil Procedure 24(a)(2), or in the alternative, permissively under Rule 24(b). Applicant submits that it should be permitted to intervene in this action since its goals are to protect and promote snowmobiling, sales of snowmobiles, public education regarding snowmobiling, and public access to the National Park Service lands. Applicant asserts that it has a lengthy history related to the matter of snowmobile usage in Yellowstone National Park, dating back to the 1997 and that it has participated in most of the lawsuits on the issue filed since that time. Applicant insists that if petitioners obtain the relief they seek in this matter, the result could increase the number of snowmobiles allowed into the park each day. According to applicant, this would result in positive impacts on applicant's members due to a potential increase in the sales of its member's snowmobiles

and snowmobile parts. On the other hand, if petitioner's are denied relief, applicant advances that its members will be negatively impacted due to a reduced need to update and replace rental snowmobile fleets. Applicant also sets forth that the 2009 Plan "will cause potential individual purchasers not to purchase BAT snowmobiles due to decreased opportunities to enjoy them [and a] decreased usage of existing snowmobiles will extend the life of the vehicles, thereby reducing sales of new snowmobiles and parts." [Doc. 26 at 8]. Applicant asserts that for these reasons it should be granted intervention to protect its interests.

Intervenor-Respondent, National Parks Conservation Association (hereinafter intervenor) then filed an opposition [Doc. 32] to applicant's motion. Intervenor argues applicant has not demonstrated standing to intervene in this matter. Intervenor contends applicant's claim that the 2009 Plan will reduce sales is speculative and inconsistent with other evidence before the Court. Intervenor further contends that applicant's claims regarding potential sales losses are too far removed from the implementation of the 2009 Winter Use Plan to give applicant standing. Intervenor finally argues applicant's alleged injuries do not satisfy the "zone of interests" on which the statutes named in the petition will protect. Therefore, intervenor requests that applicant's motion be denied.

## II.   ANALYSIS

### a)   Standing

The Court finds the first issue that must be addressed in this matter is whether applicant has jurisdiction to intervene in this litigation. Therefore, the Court must undertake the "threshold

question" of whether applicant has standing to intervene. *Wyoming ex rel Crank v. United States*, 539 F.3d 1236, 1241 (10th Cir.2008). "Any party, whether original or intervening, that seeks relief from a federal court must have standing to pursue its claims." *City of Colorado Springs v. Climax Molybdenum Co.*, 587 F.3d 1071 (10th Cir.2009)(*quoting Dillard v. Chilton County Com'n*, 495 F.3d 1324 (11th Cir.2007)). Be that as it may, the Tenth Circuit has stated that an applicant-intervenor need not have standing on its own in order to intervene under Rule 24. Applicant-intervenors may "piggyback" an existing party's standing to assert a claim. "[P]arties seeking to intervene under Rule 24(a) or (b) need not establish [independent] Article III standing *so long as another party with constitutional standing on the same side as the intervenor remains in the case*. . . piggyback standing is permissible." *City of Colo. Springs v. Climax Molybdenum Co.*, 587 F.3d 1071, 1079 (10th Cir.2009)(internal citations omitted, emphasis in original). *See also San Juan County, Utah v. U.S.*, 503 F.3d 1163, 1171 (10th Cir.2007)(explaining that although other circuits has reached different conclusions on this issue, in the Tenth Circuit "prospective intervenors need not establish their own standing to sue or defend, in addition to meeting Rule 24's requirements, before intervening."). *Compare City of Herriman v. Bell*, 590 F.3d 1176, 1184 (10th Cir. 2010)( clarifying that in order to "intervene under *Rule 24(b)* the proposed intervenor must have a claim or defense that shares at least some aspect with a claim or defense presented in the main action.").

    The Court finds that since the issue of whether petitioners have independent Article III standing to challenge the 2009 Winter Use Plan has not been fully adjudicated, applicant-intervenor may be able to piggyback onto petitioners' standing if it can show the other Rule 24 criteria are met.

Therefore, the Court will proceed with a Rule 24(a) analysis. However, should petitioners drop out of this litigation, for whatever reason, applicant will then need to "establish its own standing to continue pursuing litigation." *San Juan County*, 503 F.3d at 1172.

    b)    **Rule 24(a) Intervention**

Federal Rule of Civil Procedure 24(a)(2) provides:

> Upon timely motion, the court must permit anyone to intervene who . . . claims an interest relating to the property or transaction, that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest.

Thus, an applicant may intervene as of right if: (1) the motion is "timely"; (2) an interest is claimed relating to the subject to the action; (3) the applicant's interest may be impaired or impeded, as a practical matter; and (4) the applicant's interest is not adequately represented by existing parties. *See Coalition of Ariz./N.M. Counties for Stable Econ. Growth v. Dep't of the Interior*, 100 F.3d 837, 840 (10th Cir.1996). The Tenth Circuit follows "a somewhat liberal line in allowing intervention." *Wildearth Guardians v. U.S. Forest Service*, 573 F.3d 992, 995 (10th Cir.2009)(quoting *Utah Ass'n of Counties v. Clinton*, 255 F.3d 1246, 1249 (10th Cir.2001)). The Court views the intervention test as a pragmatic guide to disposing of lawsuits with efficiency as well as with due process. *See e.g. Sierra Club v. Espy*, 18 F.3d 1202, 1203 (5th Cir.1994); *Natural Resources Defense Council, Inc. v. United States Nuclear Regulatory Comm'n*, 578 F.2d 1341, 1344-45 (10th Cir.1978).

### 1) Legal Interest

The timeliness of applicant's motion to intervene has not been disputed. Therefore, the Court will begin by considering whether applicant has a "legal interest" in the litigation. In determining intervention as of right, the Court must take under consideration as to whether an intervenor applicant "would be substantially affected" by the outcome of the case. *San Juan County*, 503 F.3d at 1195. If the applicant will be substantially affected, then it should be entitled to intervene. *Id.*. In deciding whether intervention is proper in a case, the Court will consider "the practical effect of the litigation on the applicant" by looking at the unique facts and circumstances of each individual case. *San Juan County v. United States*, 503 F.3d 1163, 1193 (10th Cir.2007). The Court must construe Rule 24 liberally and any doubts must be construed in favor of the applicant-intervenor. *See generally* W.M. Moore, *Moore's Federal Practice* vol. 6, § 24.03 (3d ed., 2010).

As noted above, the present litigation stems, in part, out of applicant's ongoing litigation involvement in snowmobile access in Yellowstone National Park. The Court begins by finding the threat of potential economic injury based on the outcome of a case provides the requisite interest. *See Utahns for Better Transp. V. U.S. Dept. Of Transp.*, 295 F.3d 1111, 1115-16 (10th Cir. 2002). Applicant argues that it has a significant protectable economic interest in the instant lawsuit. It asserts that if petitioners are granted a remand on the 2009 Winter Use Rule, more snowmobiles will be allowed to enter Yellowstone each day, which could positively impact snowmobile and snowmobile part sales. However, if petitioners are denied relief, fewer snowmobiles may be purchased and there may be a decreased need for parts. Therefore, the Court finds applicant posses

economic and commercial interests in snowmobile opportunities in Yellowstone National Park. The Court concludes applicant has a significant protectable interest in that its members could potentially suffer significant financial hardships.

### 2)   Impairment

"[T]he question of impairment is not separate from the question of existence of an interest." *Utah Ass'n of Counties*, 255 F.3d at 1253 (internal quotation omitted). *See also Moores*, § 24.03[1][c] (explaining the intervention criteria should not be analyzed in a vacuum.). "To satisfy [the impairment of interest element] of the intervention test, a would-be intervenor must show only that impairment of its substantial legal interest is possible if intervention is denied. This burden is minimal." *Utah Ass'n of Counties*, 225 F.3d at 1253.

Applicant maintains that it represents sellers of snowmobiles and snowmobile parts who depend on snowmobiling for their financial well-being. As a result, applicant's members are directly benefitted from recreational snowmobiling in Yellowstone. As such, applicant may be affected by the outcome of the instant litigation regarding the number of snowmobiles that will be permitted in Yellowstone National Park. Moreover, as applicant points out, the precedent established in this action may impact all winter use regulations on federal lands, which could greatly impair applicant's economic well-being. Therefore, the Court finds that the instant litigation may, as a practical matter, impair or impede applicant's ability to protect its interests.

### 3) Adequacy of Existing Representation

The final intervention element requires adequacy of the representation by the existing parties. *Wildlife Guardians*, 573 F.3d at 996 (quoting *Utah Ass'n of Counties*, 255 F.3d at 1254). "[A]n intervenor need only show the *possibility* of inadequate representation." *Id.* "The possibility that the interests of the applicant and the parties may diverge 'need not be great' in order to satisfy this minimal burden." *Utah Ass'n of Counties*, 255 F.3d at 1254 (quoting *Natural Res. Def. Council*, 578 F.2d at 1346). A showing of inadequate representation is easily made when the party that an intervenor must rely on is a government actor, "who may not view that interest as coextensive with the intervenor's particular interest." *Wildlife Guardians v. U.S. Forest Service*, 573 F.3d 992, 996 (10th Cir.2009).

The Court finds applicant's interest is not adequately represented by the existing petitioners. In this case, applicant would be relying on governmental entities to represent its interests. "The government's representation of the public interest generally cannot be assumed to be identical to the individual parochial interest of a particular member of the public merely because both entities occupy the same posture in the litigation." *Id.* Moreover, government policy may, and does, shift. *Id.* The Court finds petitioners will be responsible for representing a broad array of public interests in this case. By contrast, applicant's interests lie with the future of their economic well-being. Since applicant possesses economic interests in the outcome of the case, it may make a more vigorous presentation of the economic aspect of the situation than would current parties. Thus, the Court finds applicant has demonstrated an adequate showing of the Rule 24 intervention criteria of interest,

impairment, and inadequate representation.

### III. CONCLUSION

Based on the foregoing, the Court concludes applicant has a sufficiently direct, substantial, and legally protected interest, thereby meeting its burden of establishing the potential for impairment of those interests. The Court finds applicants is entitled to intervention as of right. Accordingly, the Court will not address the issue of permissive intervention pursuant to Rule 24(b).

NOW, THEREFORE, IT IS ORDERED that Applicants, International Snowmobile Manufacturers Association's, Motion to Intervene be, and the same is hereby, GRANTED.

Dated this 19th day of March, 2010.

William C. Beaman
United States Magistrate Judge